LEXSEE 2000 U.S. DIST. LEXIS 19727

ERVIN F. TAYLOR v. MAXXIM MEDICAL, INC., ET AL.

Civ. No: 3:99CV338(AHN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2000 U.S. Dist. LEXIS 19727

March 23, 2000, Decided

**DISPOSITION:** [*1] Defendants' motion to dismiss DENIED as moot. Defendants' substitute motion to dismiss DENIED as to count three and GRANTED as to counts four and five.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For ERVIN F. TAYLOR, plaintiff: Andrew B. Bowman, Law Offices Of Andrew Bowman, Westport, CT.

For MAXXIM MEDICAL, INC, CIRCON CORP., RONALD J. EHMSEN, ANDREW D. SIMONS, defendants: Michael N. Lavelle, Sheila Anne Denton, Gerald C. Pia, Jr., Pullman & Comley, Bridgeport, CT.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINIONBY:** Alan H. Nevas

**OPINION:**

RULING ON DEFENDANTS' SUBSTITUTE MOTION TO DISMISS

This is an employment discrimination action under the Age Discrimination in Employment Act ("ADEA"). The plaintiff, Ervin F. Taylor ("Taylor"), alleges that the conduct of his employer violated ADEA, 29 U.S.C. § 621 et seq., in three separate ways. Taylor also asserts state law claims of intentional infliction of emotional distress against all defendants and tortious interference with financial expectancy against two individual defendants.

Pending before the court is the defendants' substitute motion to dismiss [doc. # 10] n1 counts three, four and five for failure to state a claim on which relief can [*2] be granted. n2 For the following reasons, the motion is GRANTED in part and DENIED in part.

n1 The defendants' initial motion to dismiss was filed in May, 1999. In response to that motion, the plaintiff filed an amended complaint. The motion under consideration addresses the claims asserted in the amended complaint. The original motion to dismiss [doc. # 5] is thus denied as moot.

n2 At oral argument, the defendants withdrew their motion to dismiss count two of the complaint.

FACTS

Taylor is 72 years old. He was employed by defendant Circon Corporation ("Circon") for more than 23 years. In August, 1986, Taylor assumed the position of Director of Regulatory Affairs and Quality Assurance at Circon's Stamford, Connecticut office. He held that position until he was terminated from employment in February, 1999.

The defendant Maxxim Medical, Inc. ("Maxxim") assumed control of Circon in 1998. Ronald J. Ehmsen ("Ehmsen"), one of the individual defendants, is Circon's Vice President of Regulatory Affairs. [*3] The other individual defendant, Andrew D. Simons ("Simons"), is Vice President, Secretary and General Counsel of Circon.

Taylor alleges that beginning in October, 1996, the defendants engaged in a course of conduct designed to drive him from his employment because of his age. Specifically, Taylor alleges that the defendants falsely accused him of disclosing trade secrets, took improper

disciplinary action against him, and blamed, harassed and embarrassed him for the mistakes of others. He alleges that Ehmsen, with the consent and approval of Simons and Circon, made his working conditions so intolerable as to force him to leave. According to the complaint, Ehmsen ridiculed, intimidated, and harassed him, rejected his work, and placed him on probation while he was on medical leave. He contends that Ehmsen and Simons acted outside the scope of their employment to deprive him of a bonus.

STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); [*4] Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1992). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); see also Still v. Debuono, 101 F.3d 888, 891 (2d Cir. 1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

DISCUSSION

Taylor alleges three causes of action under ADEA. Count one alleges that the defendants' conduct, which culminated in his termination, was wilful, knowing and in reckless disregard of the requirements of ADEA. Count two alleges that his termination was in retaliation for a claim of age discrimination that he made in June, 1998. In Count three, he claims that the defendants used false and pretextual reasons to place him on probation, and humiliated and embarrassed him because [*5] of his age. In count four, Taylor asserts a claim for intentional infliction of emotional distress. Finally, in count five, Taylor claims that the individual defendants tortiously interfered with his financial expectancy.

The defendants maintain that the ADEA claim alleged in count three is duplicative of the ADEA claim raised in count one. They also contend that the emotional distress claim should be dismissed because Taylor has not alleged extreme and outrageous conduct. Finally, the individual defendants move to dismiss count five on the grounds that Taylor has not alleged that they acted for direct and personal gain and that this must be alleged where, as in this case, the tortfeasors are agents of one of the contracting parties.

I. ADEA Claim - Count Three

The defendants move to dismiss Taylor's ADEA claim based on the defendants' pre-termination conduct on the ground that it is duplicative of the ADEA claim asserted in count one. This argument is without merit.

Fed. R. Civ. P. 10(b) provides that each claim founded on a separate transaction or occurrence should be stated in a separate count of the complaint. Separate counts are appropriate when they make the pleadings [*6] more meaningful and comprehensible and less confusing. See 10 Wright & Miller, Federal Practice & Procedure § 1324. Under the federal rules, a party may, at his option, use separate counts even when a single claim for relief is stated if the operative facts permit alternative theories for relief. See Fed. R. Civ. P. 8(3)(2); see also 10 Wright & Miller at § 1325.

Here, contrary to the defendants' contention, Taylor's claims of discriminatory termination and pre-termination harassment are based on separate and distinct factual occurrences. Either or both of the separate sets of operative facts can give rise to an enforceable claim under ADEA.

First, in count one, Taylor alleges that he was terminated because of his age. This is actionable under ADEA. See, e.g., Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1991) (holding that it is a violation of ADEA to discharge an employee because of his age). Second, in count three, Taylor alleges that he experienced a hostile work environment and discrimination in the terms, privileges and conditions of his employment because of his age. ADEA imposes liability for a hostile work environment. See, e.g. [*7] , Bovers v. The Flying Tiger Line, Inc., 979 F.2d 291, 296-98 (2d Cir. 1992) (noting that ADEA proscribes differential treatment of older workers with respect to terms, conditions and privileges of employment).

Because Taylor could prevail on either or both of these claims, and because these claims are based on separate factual occurrences, he has properly alleged them in separate counts of the complaint.

II. Intentional Infliction of Emotional Distress

The defendants maintain that the claim for intentional infliction of emotional distress should be dismissed because their alleged conduct is not extreme and outrageous as a matter of law. In opposition, Taylor contends that the elements of this cause of action have been well pleaded and that dismissal at this stage of the proceedings is not appropriate. The court disagrees.

Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so

outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind. See Petyan v. Ellis, 200 Conn. 243, 254, 510 A.2d 1337 (1986); [*8] Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986). Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient. See Kintner v. Nidec-Torin Corp., 662 F. Supp. 112, 114 (D. Conn. 1987); Reed, 652 F. Supp. at 137. The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance. Kintner, 662 F. Supp. at 114; Collins v. Gulf Oil Corp., 605 F. Supp. 1519, 1522 (D. Conn. 1985).

Here, Taylor alleges that the defendants falsely accused him of disclosing trade secrets, took improper disciplinary action against him, blamed, harassed and embarrassed him for the mistakes of others, ridiculed him, rejected his work and placed him on probation while he was on medical leave. Even construing the allegations in a light most favorable to Taylor, the defendants' acts do not transgress the bounds of socially tolerable behavior. See Venterina v. Cummings & Lockwood, 117 F. Supp. 2d 114, 1999 U.S. Dist. LEXIS 7307, at *11 (D. Conn. 1999); see also Valencia [*9] v. St. Francis Hosp. & Med. Ctr., 1996 Conn. Super. LEXIS 894, Civ. No. 94-538867 S (Superior Court Apr. 2, 1996) (holding that conduct was not extreme and outrageous where defendant "grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled at her"); Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 552-53 (D. Conn. 1996) (concluding that conduct was not extreme and outrageous where employee was suddenly terminated and physically escorted from the building like a criminal) aff'd, 104 F.3d 355 (2d Cir. 1996); Barbuto v. William Bachus Hosp., No. 105452 (Conn. Supp. Ct. April 13, 1995) (defendant's conduct in removing plaintiff from a work-shift schedule despite reassurances it would not do so and suspending her for two days not extreme and outrageous); Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986) (conduct not extreme and outrageous where policy against leaves of absence was applied to employee undergoing cancer treatment).

Because Taylor's allegations are not sufficient to satisfy the threshold requirements of outrageousness, count four must be dismissed. [*10]

III. Tortious Interference With Financial Expectancy

The individual defendants, Ehmsen and Simons, move to dismiss count five in which Taylor claims that they tortiously interfered with his contract of employment and his financial expectancy of severance or retention bonuses. They maintain that he does not allege that they acted outside the scope of their authority or for their own personal gain, both of which are necessary where the defendants are agents of one of the contracting parties.

The Connecticut Supreme Court has long recognized a cause of action for tortious interference with contract rights or other business relations. See Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-02, 374 A.2d 179 (1977). But, it is well settled that this tort only lies when a third party adversely affects the contractual relations of two other parties. See Wellington Sys. v. Redding Group, 49 Conn. App. 152, 168, 714 A.2d 21 (1998). Where the alleged tortfeasor is an agent of one of the contracting parties, and thus indirectly a party to the contract, there can be no liability for such interference. See Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446, 451, 477 A.2d 653 (1984); [*11] Paint Prod. Co. v. Minwax Co. Inc., 448 F. Supp. 656, 658 (D. Conn. 1978). "An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable for breaching its own contract." Malik v. Carrier Corp., 202 F.3d 97, 109 (2d Cir. 2000); see also Paint Prod. Co., 448 F. Supp. at 658. A corporate employee is thus insulated from liability for this tort unless the plaintiff alleges and proves that the employee used his corporate power improperly for his own benefit and that benefit to the corporation played no role in his actions. See Malik, 202 F.3d at 109 (noting that a corporate employee is presumptively entitled to immunity for actions taken in the scope of employment); see also Espinosa v. Connecticut College, 1994 Conn. Super. LEXIS 1624, No. 522872, 1994 WL 320222 (Conn. Superior. Ct. June 27, 1994); Bowman v. Grolsche Bierbrouwerij, B.V., 474 F. Supp. 725, 733 (D. Conn. 1979).

Here, the complaint alleges that [*12] Ehmsen and Simons were high level managerial employees who were acting maliciously outside the scope of their employment when they commenced a course of conduct and action intended and calculated to make the plaintiff's working conditions so intolerable that he would be forced to leave. The complaint does not, however, allege that these individual defendants were acting for their personal benefit or gain or that benefit to the corporation played no role in their actions. The absence of these allegations is fatal to the claim of tortious interference.

CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss [doc. # 5] is DENIED as moot. The defendants' substitute motion to dismiss [doc # 10] is DENIED as to count three and GRANTED as to counts four and five.

The plaintiff is granted leave to amend count five within 30 days consistent with this ruling.

SO ORDERED this 23 day of March, 2000 at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge

LEXSEE 2001 US DIST LEXIS 17341

MARIO A. JAVIER, Plaintiff, v. ENGELHARD CORP., et al., Defendants.

CIVIL ACTION NO. 3:00-CV-2301 (JCH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2001 U.S. Dist. LEXIS 17341

October 1, 2001, Decided

**DISPOSITION:** [*1] Defendant Perry's motion to dismiss was granted. Defendants' motions to dismiss were granted in part. Plaintiff's motion to renew claims under CFEPA was denied without prejudice.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** MARIO A. JAVIER, plaintiff, Pro se, Hartford, CT.

For ENGELHARD CORP, BARRY PERRY, BILL WILLEN, FRANK GERLANDO, ELAINE STROCK, MARC FRONING, defendants: Seth Jacoby, Purtill, Purtill & Pfeffer, South Glastonbury, CT.

For ENGELHARD CORP, BARRY PERRY, BILL WILLEN, FRANK GERLANDO, ELAINE STROCK, MARC FRONING, defendants: Patrick L. Lail, Stanford G. Wilson, Elarbee, Thompson & Trapnell, Atlanta, GA.

For BARRY PERRY, defendant: Scott E. Atwood, Elarbee, Thompson & Trapnell, [*2] Atlanta, GA.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINIONBY:** Janet C. Hall

**OPINION:**

RULING ON DEFENDANT PERRY'S MOTION TO DISMISS [DKT. NO. 21] AND DEFENDANTS ENGELHARD CORPORATION, GERLANDO, WILLEN, FRONING AND STOCK'S MOTION TO DISMISS [DKT. NO. 24]

The plaintiff, Mario Javier ("Javier"), brings claims against the defendants, Engelhard Corporation, Barry Perry, Frank Gerlando, Bill Willen, Marc Froning, and Elaine Strock pursuant to 42 U.S.C. § 1981a and 42 U.S.C. § 2000e, et seq. (Title VII) and the Connecticut Fair Employment Practices Act ("CFEPA"), § 46a-60, et seq. The plaintiff also asserts claims for intentional and negligent infliction of emotional distress. The plaintiff alleges that the defendants have subjected him to unlawful employment practices, including denying him training, failing to promote him and terminating his employment, on the basis of his national origin and in retaliation for his protest of their wrongful conduct.

Defendant Barry Perry ("Perry") seeks dismissal on all claims brought against him on the grounds that the court lacks personal jurisdiction over him and on the grounds that [*3] the plaintiff has failed to state a claim against him. The defendants, Frank Gerlando, Bill Willen, Marc Froning and Elaine Strock ("employee defendants"), seek dismissal of the claims against them brought under Title VII and CFEPA, on the grounds that they can not be held personally liable under either the federal or state statute. Finally, Engelhard Corporation and the employee defendants seek dismissal of the intentional and negligent infliction of emotional distress claims on the grounds that the facts alleged do not state such claims. n1

---

n1 The plaintiff objects that the defendants failed to seek a pre-filing conference as required by the court's "Order on Pretrial Deadlines" effective as of the filing of this action. The court has since ceased this practice and anyone calling chambers to schedule such a conference is advised that it is not necessary.

For the reasons stated below, the court GRANTS Perry's motion to dismiss (Dkt. No. 21) and GRANTS in part and DENIES in part Engelhard and the employee defendants' [*4] motion to dismiss (Dkt. No 24).

## I. FACTS

Taking the allegations in the amended complaint as true, Javier has set out the following facts. Engelhard Corporation is a company headquartered in New Jersey, with a facility located in East Windsor, Connecticut. Barry Perry is the CEO of Engelhard Corporation and Frank Gerlando was the General Manager of the Connecticut facility during the time Javier worked for the company. During the same time period, Bill Willen was employed as a Technical Manager at the Connecticut location, Marc Froning was a Materials Manager, and Elaine Strock was employed as a Materials Engineer

Javier was hired by Engelhard Corporation as a temporary worker in the position of laboratory technician in December of 1997. In February of 1998, based on verbal promises of promotion, Javier accepted a permanent position with the company. In March and April of 1998, Javier was denied an opportunity to participate in a training program. In August of 1998, Strock allegedly told Javier that he was "a burden to the lab and to the company" and that his personal problems were not a concern to the company. When Javier attempted to offer his suggestions to Froning, [*5] he was told to "bite his lips." Throughout 1998 and 1999, Javier was excluded from trainings.

Javier also alleges that he was excluded from a list of company accomplishments and that his picture was not included in a report on new employees. In addition, white employees hired after him were promoted above him. While his evaluation in 1998 was very positive, Javier reports that he continued to get insulted by other employees. In March of 1999, Froning said to Javier that "you foreigners are taking jobs away from us."

In March of 1999, Javier received a letter of termination from the company. On June 11, 1999, Javier filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO"). Javier received a Right to Sue Letter from the EEOC on September 4, 2000 and received a release from the CCHRO on July 9, 2000. Javier filed a claim in this court on December 1, 2000. Javier filed an Amended Complaint on January 5, 2001. n2

---

n2 The court notes that the first complaint was not served on any of the defendants. Javier served the defendants with the Amended Complaint.

---

[*6]

## II. DISCUSSION

### A. Standards of Review

A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In considering such a motion, the court must accept the factual allegations in the complaint as true, and all inferences must be drawn in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). "Bald assertions and conclusions of law will not suffice to state a claim . . . .." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) [*7] (citations omitted).

Defendant Perry also seeks dismissal under 12(b)(2), on the grounds that the court does not have personal jurisdiction over him for purposes of this complaint. A district court has broad discretion in deciding how to proceed with a motion to dismiss for lack of personal jurisdiction, including conducting an evidentiary hearing. CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986). The plaintiff ultimately bears the burden of establishing, either at an evidentiary hearing or at trial, that the court has personal jurisdiction over the defendants. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996). Where, as here, the issue is addressed in a motion, without the benefit of an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.). Allegations in the pleadings and affidavits "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." [*8] A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

### B. Perry's Motion to Dismiss n3

Case 3:03-cv-00477-JCH    Document 22-3    Filed 10/23/2003    Page 7 of 15

Page 3
2001 U.S. Dist. LEXIS 17341, *

n3 The court notes first that this motion to dismiss was timely filed as it was filed by Perry within 90 days of the filing of the Amended Complaint.

1. Personal Jurisdiction

Perry is a resident of New Jersey. Therefore, personal jurisdiction can be asserted over Perry only when (1) the federal court has jurisdiction under the forum state's laws; and (2) an assertion of jurisdiction under the circumstances of the case comports with the requirements of due process. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000).

Turning to the first prong of the inquiry, Connecticut has two long-arm statutes, Conn. Gen. Stat. § § 52-59b and 33-929. Section 33-929 relates only to foreign corporations and is inapplicable to Perry. Section 52-59(b)(a), however, is applicable and reads in pertinent part:

> (a) As to a cause of action arising from any of the acts [*9] enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . , who . . . (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Javier simply alleges that Perry transacted business in the State of [*10] Connecticut and is, therefore, reached by the long-arm statute. Javier has presented no allegations regarding Perry committing a tortious act in the state such that the court would have personal jurisdiction. In his declaration, Perry states that he had no involvement in any decision related to Javier's employment with the company. Perry's Decl. at P 6-10.

The relevant inquiry when interpreting the phrase "transacts any business" is the personal contacts of an agent or director of a company in the forum state. Jurisdiction over a director or CEO does not automatically emanate from jurisdiction over the company itself. Mozes v. Welch, 638 F. Supp. 215, 223 (D. Conn. 1986). Javier has made no showing that Perry's personal contacts with the state are such that this court could extend jurisdiction. In Perry's Declaration he states that he does not transact business in Connecticut as an individual and any business he did in Connecticut while CEO of Engelhard involved his duties as a corporate officer. Perry's Decl. at P 5. While the court has jurisdiction over the company itself, that is not enough under Connecticut's long-arm statute to extend jurisdiction to Perry merely [*11] because he is an officer. See id.; see, also, Hagar v. Zaidman, 797 F. Supp. 132, 137 (D. Conn. 1992) (finding no personal jurisdiction over a corporate officer where any business he transacted in Connecticut was on behalf of his company). Because the court does not have personal jurisdiction over Perry, the court grants Perry's motion to dismiss. n4

n4 The court notes that the claims against Perry could have been dismissed on the alternative ground that Javier has failed to state a claim against this defendant as he is not named in any of the allegations in the complaint. Fed. R. Civ. P. 12(b)(6); See also Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that when a complaint alleges no specific acts of a defendant the complaint is properly dismissed, even if the complaint is brought by a pro se complainant).

B. Engelhard Corporation, Gerlando, Willen, Froning and Strock's Motion to Dismiss n5

n5 Again, the court notes at the outset that this motion was timely filed, having been filed within 90 days of the filing of the Amended Complaint.

[*12]

1. Individual Liability Under Title VII

The employee defendants seek dismissal of Javier's Title VII claims, brought against them in their capacities as employees of Engelhard. The Second Circuit has held that supervisors or individuals cannot be held personally liable under Title VII. Wrighten v. Glowski, 232 F.3d 119, 119 (2d Cir. 2000); Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995). Therefore, Javier cannot assert his Title VII claims against the employee defendants.

2. Individual Liability Under the CFEPA

The employee defendants also seek dismissal of the claims brought against them under CFEPA on the grounds that individuals cannot be held liable under the statute. The Connecticut Supreme Court has not addressed this issue and there has been a split among the lower courts. Compare Walters v. Homestaff Health Care, 1996 Conn. Super. LEXIS 321, No. CV 950146961S, 1996 WL 88058 (Conn. Super. Ct. Feb. 8, 1996) (finding the vice-president of a firm not liable in his individual capacity under the plain meaning of C.G.S. § 46a-60(a)(8) because he was not an "employer") and Martinez-Duffy v. DeJesus, 1996 Conn. Super. LEXIS 1120, No. CV 940545193S, slip op. (Conn. Super. Ct. May 1, 1996) [*13] (holding that a high school principal is a supervisor, not employer, and therefore not individually liable under the CFEPA), with Lueneburg v. Mystic Dental Group, 1996 Conn. Super. LEXIS 2001, No. CV 535839, 1996 WL 456967 (Conn. Super. Ct. Aug. 1, 1996) (interpreting the CFEPA to allow supervisory employees to be held individually liable).

The question of whether individual employees can be held liable under the Connecticut Fair Employment Practices Act ["CFEPA"] Conn. Gen. Stat. § 46a-60(a)(1) has been certified to the Connecticut Supreme Court by this court. See Perodeau v. City of Hartford, No. 99cv00807 (AHN)(D. Conn. Nov. 11, 2000) (endorsement granting motion to certify question). In light of the likely imminent decision on point, the court denies the defendants' motion to dismiss the CFEPA claims against the employee defendants without prejudice to renewal, pending the decision of the Connecticut Supreme Court.

3. Intentional Infliction of Emotional Distress

The employee defendants and Engelhard Corporation seek dismissal of Javier's claim for intentional infliction of emotional distress. The defendants argue that Javier has not stated, on the face of his complaint, allegations [*14] which meet the standards of this type of claim.

In order to assert a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme or outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986); see also Miner v. Town of Cheshire, 126 F. Supp. 2d 184 (D. Conn. 2000).

"Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." Miner, 126 F. Supp. 2d at 194. Routine employment action, even if made with improper motivations, do not constitute extreme or outrageous behavior. In [*15] addition, Connecticut courts have held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." Id. at 195 (citations omitted).

Javier's claims against Engelhard and the employee defendants for intentional infliction of emotional distress are that he was not advanced along with other new employees and was eventually terminated, he was subjected to various insults, he was not allowed to participate in trainings and was not included in company publications. While such actions were no doubt hurtful to Javier, these actions do not, as a matter of law, support a claim for intentional infliction of emotional distress. The employment actions taken against Javier may have been unlawfully motivated but, by themselves, do not constitute extreme and outrageous behavior. The Connecticut courts have held that the insults and indignities are not enough to support such a claim. Therefore, the court finds that Javier has not stated a claim for intentional infliction of emotional distress and grants the defendants' motion [*16] as to that claim.

4. Negligent Infliction of Emotional Distress

The defendants also seek dismissal of Javier's claims for negligent infliction of emotional distress. The defendants argue that Javier must demonstrate that the defendants engaged in unreasonable conduct in the termination process.

In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that

distress, if it was caused, might result in illness or bodily harm." Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). The Connecticut Appellate Court has further required that negligent infliction of emotional distress claims plead outrageous or extreme conduct. Muniz v. Kravis, 59 Conn. App. 704, 709, 757 A.2d 1207 (2000) ("The elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous."); see also Johnson v. Chesebrough-Ponds, Inc., 1996 U.S. App. LEXIS 33505, 1996 WL 734043 at *3 (2d Cir. 1996). [*17]

This court has recently held that claims of negligent infliction of emotional distress are not limited to conduct in the termination process. Munck v. New Haven Savings Bank, No. 3:01-cv-772 (D. Conn. September 17, 2001). However, even if the court looks beyond the termination, Javier's claim fails on the same grounds as his claim for intentional infliction of emotional distress. The court finds that the conduct of Engelhard and its employees was not extreme and outrageous. Therefore, the court grants defendants' motion to dismiss as to that claim.

### III. CONCLUSION

The court grants Perry's motion to dismiss (Dkt. No. 21) on the grounds that the court does not have personal jurisdiction over the defendant and because the plaintiff has failed to state a claim against this defendant. The court grants in part the motion to dismiss by Engelhard Corporation, Gerlando, Willen, Froning, and Strock (Dkt. No. 24). The court grants the motions on the grounds that the individual employees named cannot be held liable under Title VII and that the plaintiff has failed to state a claim for either intentional or negligent infliction of emotional distress. The court denies the motion, [*18] without prejudice to renew, as to the claims brought under CFEPA, pending the Connecticut Supreme Court's ruling on the issue of individual liability.

### SO ORDERED

Dated at Bridgeport, Connecticut this 1st day of October, 2001

/s/

Janet C. Hall

United States District Judge

WANDA SCANDURA VS. FRIENDLY ICE CREAM CORPORATION

CV 93 0529109 S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
HARTFORD - NEW BRITAIN, AT HARTFORD

1996 Conn. Super. LEXIS 1642

June 26, 1996, Decided
June 26, 1996, Filed

**DISPOSITION:** [*1]

The defendant's motion for summary judgment is granted as to the first count of her Amended Complaint, but denied as to the second and third counts of the Amended Complaint.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** Michael R. Sheldon, J.

**OPINIONBY:** Michael R. Sheldon

**OPINION:**

MEMORANDUM OF DECISION

In this case, plaintiff Wanda Scandura ("Ms. Scandura") has sued defendant Friendly Ice Cream Corporation ("Friendly") to recover money damages for certain losses she claims to have suffered due to Friendly's treatment of her, through its managerial agents and employees, when she was employed as a Friendly store manager in 1991 and 1992. In the first count of her three-count Amended Complaint, Ms. Scandura accuses Friendly of intentional infliction of emotional distress. She bases this claim on the alleged misconduct of two Friendly district managers who supervised her directly in the relevant time frame. Mr. James Messer, to whom the plaintiff reported in the summer of 1991, is claimed to have engaged in extreme and outrageous conduct towards the plaintiff by making her furnish daily sales projections for the restaurant she managed, disallowing her from taking a scheduled vacation for which she had already [*2] made airline reservations, and ridiculing her, "unjustifiably, . . . often obscenely," and in a manner which insulted her integrity, both before and after he learned that she suffered from a medical condition that made her particularly susceptible to emotional distress. Mr. Dennis Collins, who supervised the plaintiff when she returned to work following an 8-month medical leave in March of 1992, is claimed to have worsened the effects of Mr. Messer's actions, first by forcing the plaintiff to share her job duties with another person, then by demoting her after telling her that she was not a "manager of the 90's."

In the second count of her Amended Complaint, Ms. Scandura charges Friendly with defamation based on the alleged publication by her immediate supervisors, to some of her co-workers and certain Friendly customers, of untrue statements concerning her job qualifications and job performance. These defamatory statements are claimed to have included both the specific accusation that the plaintiff had "made up food costs" and the more general criticisms that she was "in over her head," she "didn't know what she was doing," and she wasn't a "manager of the 90's." A.C., Count II, [*3] par.   .

In the third and final count of her Amended Complaint, the plaintiff alleges that by so humiliating her in and about her place of work, the defendant, through its managerial employees, constructively discharged her from its employ, and further, that it did so to avoid paying her extended medical insurance benefits under its workers' compensation policy. The plaintiff claims that such conduct makes the defendant liable to pay her damages under C.G.S. Sec. 31-270.

The defendant now moves this Court for summary judgment on all counts of the Amended Complaint, claiming that it is entitled to judgment as a matter of law because the plaintiff will be unable to establish at least one essential element of and/or to disestablish at least

one valid and sufficient special defense to each such count based on the materials submitted in support of this Motion. In addition to those materials, which include the affidavit of Dennis Collins and the transcript of Ms. Scandura's deposition in this case, the defendant has supported its position with two memoranda of law. The plaintiff opposes each and every one of the defendant's arguments, and has supported its position with two opposing [*4] memoranda of law and an affidavit from Ms. Scandura.

I

Summary judgment shall be rendered for the moving party if the "pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." C.P.B. § 384. "'Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact'; . . . 'it [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists.'" Wadia Enterprises Inc. v. Hirschfeld, 224 Conn. 240, 247, 618 A.2d 506 (1992). "The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." Id.

II

The elements required to prove a cause of action for intentional infliction of emotional distress are as follows: (1) that the actor intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his or her conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause [*5] of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). The defendant claims that on the evidence here submitted, the plaintiff cannot recover for intentional infliction of emotional distress because there is no support for her claim that the conduct of its managerial employees was "extreme and outrageous," as required to establish liability under Peytan.

Whether a defendant's proven conduct was extreme and outrageous is a question of fact that must typically be answered by the finder of fact. In the first instance, however, the court must determine whether such conduct, as supported by the available evidence, was of such a nature and quality as potentially to so qualify, and thus to support a recovery for intentional infliction of emotional distress.. See, e.g., Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19, 597 A.2d 846 (Berdon, J.).

In Connecticut, it well established that

> Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional [*6] infliction of emotional distress. "So far as it is possible to generalize from the cases, the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." W. Prosser & W. Keeton, Torts (5th Ed. 1984), Sec. 12, p. 60. The Restatement [of Torts] puts it as follows: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" 1 Restatement (Second), Torts, Sec. 46, comment (d).

Mellaly v. Eastman Kodak Co., supra at 20. Conduct may properly be labelled extreme and outrageous either because of its natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subjected to [*7] it or because of its known special tendency, appreciated in advance by the defendant, to have such an effect upon the plaintiff. Id. On this score, the Mellaly Court observed that

> the 'extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." 1 Restatement (Second), Torts, Sec. 46, comment (f).

Id.

In this case, claims the defendant, the challenged conduct of its managerial employees in supervising the

plaintiff was not "extreme and outrageous," for at most it was critical commentary upon her job performance in the rough-and-tumble setting of the American workplace. In this country, argues the defendant, every employee must expect that her job performance will be closely monitored and regularly reviewed and criticized by her employer, for successful management of a business in the competitive American marketplace requires that constant attention [*8] be given to improving workplace productivity. Whether it is blunt or subtle, fair or unfair, an employer's criticism of an employee's job performance will often be unsettling to the employee, especially in difficult economic times. Because, however, the giving and receiving of such criticism plays such an important role in the management of the workplace, the law does not permit a recovery for the distressed employee's understandable emotional upset unless the nature and extent of the criticism, and/or the manner in which it is communicated, exceeds all bounds of human decency, as described in the Restatement and the Connecticut cases which adopt it. Under that standard, concludes the defendant, merely being wrong in one's criticisms, or even wrongheaded or crude or insulting, is not enough to make one's conduct actionable as an intentional infliction of emotional distress.

The plaintiff counters this argument in two basic ways. First, she claims that the attempted litigation of this issue violates the doctrine of collateral estoppel because this Court, in denying the defendant's prior motion to strike, previously ruled that the plaintiff's Amended Complaint pleads facts which, if [*9] proved at trial, would establish that the defendant, through its managerial employees, engaged in extreme and outrageous conduct towards her. Second, she contends that even if the determination of this issue is not barred by the doctrine of collateral estoppel, there is a genuine issue of material fact as to whether the conduct at issue was extreme and outrageous because it arose from the abuse of positions of authority by persons who had actual or apparent authority over her.. For the following reasons, the Court rejects both of these arguments and agrees with the defendant that on the evidence here presented, it is entitled to judgment as a matter of law on the first count of the Amended Complaint.

A party to a lawsuit is precluded by the doctrine of collateral estoppel from relitigating any factual issue which has previously been determined against him by a valid final judgment of a court of competent jurisdiction. State v. Wilson, 180 Conn. 481, 429 A.2d 931 (1980). There are two obvious reasons why the denial of a motion to strike cannot be asserted as a basis for invoking the collateral estoppel doctrine. First, the denial of a motion to strike is merely an interlocutory [*10] order which upholds the legal sufficiency of a challenged pleading, and thus permits the further prosecution of the claims or causes of action set forth therein. By its very nature, it does not terminate any aspect of the controversy between the parties, by a final judgment or otherwise. Second, the denial of a motion to strike does not involve the determination, by any standard or for any purpose, of any of the factual issues raised by the challenged pleading. Instead, the motion presumes the truth of all facts alleged in the pleading, and on that basis tests the legal sufficiency of those facts to state a claim or cause of action. Against this background, it cannot be claimed that the prior denial of the defendant's motion to strike has any collateral estoppel effect on the issues raised on the instant motion.

The plaintiff, however, is correct in her assertion that behavior which otherwise fails to constitute extreme and outrageous conduct may yet rise to that intolerable level, and thus be actionable as intentional infliction of emotional distress, when it "'arise[s] from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority [*11] over the other, or power to affect his interests.' 1 Restatement (Second), Torts Sec. 46, comment (e)." Mellaly v. Eastman Kodak Co. supra, 20. The question here presented is thus whether or not the conduct of Friendly's managers towards the plaintiff can conceivably be so viewed.

Though the conduct of Friendly's managers towards towards the plaintiff was not always a model of civility and good taste, it was surely not so outrageous or atrocious as to meet the rarefied standard of unacceptability required for the tort of intentional infliction of emotional distress. The plaintiff, like millions of other American workers, had job responsibilities for which she was to be held accountable by her employer. As a restaurant manager, she hired new staff, planned work schedules, projected costs, and generally ran her restaurant in an effort to satisfy her customers, attract new customers, stay within her budget, and, ultimately, make a profit.

The plaintiff's immediate supervisor was the district manager. In the plaintiff's brief tenure with Friendly, she had at least three different district managers, each of whom, in his turn, monitored her performance and that of her restaurant. [*12] An important part of the district manager's job was to direct criticism to the managers of the stores within his district. Hence, an expected part of the plaintiff's job was to receive and react to such criticism.

Though the plaintiff had what she, at least, regarded as initial success as a Friendly manager, attracting new customers to her restaurant from the restaurant at which she previously worked and increasing her restaurant's

gross sales, she found herself criticized by two of her district managers, and was very distressed. James Messer, who became the district manager about four months after she began to work for Friendly, made it clear that he was not pleased about several aspects of her job performance, including the nature and quality of her staff and the inadequacy of her food cost projections. The staff, he observed on more than one occasion, were "fucking lunatics." The numbers appearing in the plaintiff's food cost projections, he is claimed to have said, were "pulled right out of the air." In sum, it was his net assessment of the plaintiff, which he communicated directly to her, that she was "incompetent," "out of her league," and otherwise unsuitable to manage a high-volume [*13] Friendly restaurant.

Consistent with his negative assessment of the plaintiff's job performance, Messer is further accused of making her miss a scheduled vacation so that she would be at her restaurant and submit daily costs so her numbers could be closely scrutinized. These measures, though undoubtedly disruptive for the plaintiff personally, were surely the prerogative of Friendly management, which was paying the plaintiff $ 29,000 per year to manage her restaurant properly.

Messer, of course, may have been wrong in his assessment of the plaintiff and her work. And, from the facts here presented, he appears to have been both crude in his description of the plaintiff's staff and unkind in forcing the plaintiff to cancel her prepaid vacation. Still, it can hardly be argued that this conduct was so atrocious or outrageous as to be actionable as intentional infliction of emotional distress. Criticism of employee job performance, as the defendant has correctly argued, is an expected, albeit unwelcome and uncomfortable, part of every employee's working life. Unless it is of such a nature as to exceed all bounds of human decency and to be totally unacceptable in a civilized society, it [*14] cannot support a civil damages action.

It is true, of course, that the plaintiff, in her Amended Complaint, has alleged that Mr. Messer continued to criticize her harshly in and after July of 1991, when he learned that she had become temporarily disabled due to a psychiatric disorder. This claim, however, is not supported by the plaintiff's own affidavit in opposition to this motion, for there she avers that in the wake of her psychiatric difficulties, leave of absence and return to work, Messer told her on one occasion that she was "playing games" with her health problems. None of the other behavior of which the plaintiff complains prior to her illness is claimed to have been repeated after the details of her illness became known. This, then, is not a case in which there is ant evidence to support a claim that the defendant knowingly provoked extreme emotional distress in an individual with a known special sensitivity thereto. Neither Mr. Messer's nor Mr. Collins's post-illness criticism or handling of Ms. Scandura, including Collins's placement of her in a different restaurant along with another manager, constituted conduct that cannot be tolerated in a civilized society. For [*15] these reasons, the defendant's motion for summary judgment is hereby granted as to the first count of the plaintiff's Amended Complaint.

III

The defendant next claims that it is entitled to summary judgment on the second count of the Amended Complaint, alleging defamation. As grounds for this part of its motion, it argues: first, that all allegedly defamatory statements by its managerial employees were mere expressions of opinion, not declarations of fact, and thus are not actionable as defamation; and second, that in any event, all such statements were privileged because they were made only to other employees of the corporate defendant.

Though it is certainly true that most of the verbal sallies that prompted the plaintiff to leave her job at Friendly and file this lawsuit were expressions of opinion as to her competence as a manager, and thus not actionable as defamation, Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 111-112, 448 A.2d 1317 (1982), at least one such remark of which the plaintiff complains in this case may reasonably be found to have been a statement of fact. The remark in question is not one of Mr. Messer's or Mr. Collins's many negative [*16] comments on the plaintiff's ability to perform as a Friendly manager, but Messer's specific statement to the plaintiff's bookkeeper that the plaintiff had lied and made up economic figures for her restaurant. Under Goodrich, "a statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." Id. There can be no doubt that a flat declaration that another person has lied is purely factual, and thus, if false, is actionable as defamation. There is at least a genuine issue of material fact as to whether the defendant, through Mr. Messer, defamed the plaintiff by making this alleged declaration of fact about her to her bookkeeper.

The defendant's second ground for seeking summary judgment on the second count of the Amended Complaint is that all untrue factual declarations attributed by the plaintiff to its managers were privileged because, if in fact they were made as alleged, they were communicated solely to other Friendly employees. Such in-house declarations, [*17] made by one corporate employee to another, are conditionally privileged if they

are made in good faith, to uphold a proper business interest, limited in scope to the accomplishment of that proper purpose, uttered on a proper occasion, and published in a proper manner to proper parties. Terry v. Hubbell, 22 Conn. Sup. 248, 256, 167 A.2d 919 (1960). "A conditional or qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith." Miles v. Perry, 11 Conn. App. 584, 594 n.8, 529 A.2d 199 (1987). "It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bona fide discharge of a public or private duty. . . . It is a question of fact for a court or jury, however, to determine whether the defendant has abused a conditional privilege" Id.

Thus, "even when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite [*18] or ill will against a plaintiff, but includes any improper or unjustifiable motive. [Citations omitted.] . . . An assertion of conditional privilege also fails if the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest or if the content of the publication is excessive." Bleich v. Ortiz, 196 Conn. 498, 504, 493 A.2d 236 (1985).

Against this background, the Court must conclude that on the facts here presented, there are several genuine issues of material fact as to the availability to the defendant of the claim of privilege. Focussing on the alleged statement by Mr. Messer to the plaintiff's bookkeeper that the plaintiff was lying and making up economic figures for the restaurant, serious questions are raised about the purpose for that remark, the appropriateness of stating it to the plaintiff's bookkeeper, and the good faith of Mr. Messer in so doing. Coupled, as it is claimed to have been, with a warning to the bookkeeper that she had better "cover her ass, because heads [are] going to roll," Plaintiff's Affidavit, para. 12, the remark may have had the improper purpose [*19] of undermining of the plaintiff's base of support among her staff rather than the proper purpose of improving workplace efficiency and employee accountability. As such, it may have been communicated in bad faith rather than good faith, to a person who had no legitimate business need, and thus no right, to receive it. Such questions, which go the heart of the defendant's claim of privilege, are most appropriately decided by a jury, for their determination depends upon the resolution of conflicting inferences as to the defendant's motives and intentions when it acted. The Court concludes, on that basis, that the second portion of the defendant's motion for summary judgment must be denied.

IV

The defendant's final challenge to the plaintiff's Amended Complaint is directed to the third and final count thereof, in which the plaintiff alleges that she was constructively discharged from her job as a Friendly manager in order to avoid paying her Workers Compensation benefits. In support of this aspect of its motion, the defendant argues that on the record before the Court, there is no genuine issue of material fact that the plaintiff was not in fact constructively discharged.

Under our [*20] law, a person is said to be constructively discharged from her job when her employer renders her working conditions so difficult and intolerable that a reasonable person in her circumstances would feel compelled to resign. Here, argues the defendant, no such claim can credibly be made for the following reasons. First, claims the defendant, the undisputed facts show that the plaintiff left her job voluntarily, shortly after she returned to work from a prolonged sick leave during which she received psychiatric treatment and Workers Compensation benefits. She was not fired or dismissed. Second, though upon her return to work she was assigned to a different Friendly store, where she was required to work alongside another, less experienced Friendly manager, she was neither demoted nor required to take a cut in pay. To the contrary, she retained both her managerial status and her full managerial salary. Thus, claims the defendant, though may have suffered some mild embarrassment upon being assigned for what amounted to retraining, she can hardly claim, on that basis, to have been constructively discharged from her job.

The plaintiff counters this argument by pointing both to the long and [*21] unhappy history of confrontation between herself and her district managers before she became ill and went out on leave and on the renewal of such conduct after her return. In particular, she cites the comments of Mr. Messer that she was "playing games" with her health problems and Mr. Collins's post-return suggestion to her that she should consider accepting a demotion. Considered in light of all the circumstances which preceded her illness, argues the plaintiff, the presentation to her, immediately upon her return to work, of proof that her harassment by Friendly supervisors would continue unabated made the conditions of her job so intolerable that a reasonable person in her situation would feel compelled to resign.

The Court's task in deciding this motion is not to resolve the dispute on its merits. It thus is not required or permitted to make observations on the relative strengths or weaknesses of a challenged claim, but only to

determine whether, on the facts presented, there is a genuine issue of material fact on disputed claim. Under that test, the Court concludes that the third aspect of the defendant's motion for summary judgment must be denied, because it cannot be said as [*22] a matter of law that the playing out of all of the defendant's conduct on a person with the plaintiff's particular problems and disabilities would not have compelled a reasonable person in her situation to resign.

CONCLUSION

For the above-stated reasons, the defendant's motion for summary judgment is hereby granted as to the first count of her Amended Complaint, alleging intentional infliction of emotional distress, but denied as to the second and third counts of the Amended Complaint, alleging defamation and wrongful discharge to avoid paying Workers Compensation benefits.

Sheldon, J.