UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNE-MARIE ADAMS, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3-03-cv-0477 (JCH) |
| | : | |
| v. | : | |
| | : | |
| THE HARTFORD COURANT, | : | |
| TRIBUNE COMPANY, | : | |
| LYNNE DELUCIA, PETER SLEIGHT, | : | |
| JOE OBRIEN, JAN TARR, | : | |
| VIVIAN CHOW, CLIFF TEUTSCH, | : | |
| VIVIAN DENNIS | : | MAY 14, 2004 |
| Defendants | : | |

**RULING ON DEFENDANTS' PARTIAL MOTION TO DISMISS**
**[DKT. NO. 17]**

Plaintiff, Ann-Marie Adams ("Adams"), brings claims of unlawful discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as to The Hartford Courant and Tribune Company, and unlawful discrimination pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981, as to all named defendants. Adams also alleges unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 as to The Hartford Courant and Tribune Company and violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60(a)(1) and 46a-60(a)(4). In addition, Adams alleges intentional infliction of emotional distress and negligent infliction of emotional distress claims against all defendants.

Defendants move, pursuant to Rule 12(b)(6), to dismiss Adams' claims of intentional and negligent infliction of emotional distress as to all defendants for failure to allege any facts that support those claims. Defendants also move to dismiss Adams' claim of unlawful discrimination under 42 U.S.C. § 1981 as to Chow, Dennis, and Teutsch for failure to allege any factual basis to support this claim as to those individual defendants. For the reasons which follow, the defendants' partial motion to dismiss is granted in part and denied in part.

I.      FACTUAL ALLEGATIONS & BACKGROUND

Taking the allegations in the amended complaint as true, Adams has alleged the following facts. Both The Hartford Courant and the Tribune Company are corporations doing business in Connecticut. The following individually-named defendants were all employees of The Hartford Courant and the Tribune Company during the time period Adams was employed: Lynne Delucia was the state editor; Peter Sleight was a bureau chief; Joe O'Brien was an assistant bureau chief and day editor; Jan Tarr was the editor of The Manchester Extra; Vivian Chow was the human resources director; Cliff Teutsch was the managing editor; and Vivian Dennis was the Assistant Bureau Chief and one of Adams' immediate supervisors.

Adams commenced employment with The Hartford Courant and Tribune Company in January of 2000 in the position of Reporter I. Prior to employment with The Hartford

Courant and Tribune Company, Adams had been employed as a reporter for The Norwich Bulletin, for which she provided local government coverage and wrote the police beat, enterprise, and spot news stories.  As Reporter I, Adams worked in the Manchester bureau where her primary responsibilities included writing stories for The Manchester Extra and, on occasion, writing stories for The Hartford Courant.

Adams alleges that soon after her employment commenced, she began to be treated different than similarly-situated Caucasian employees.  She was not provided a desk or a pager, and it took three months to receive business cards, instead of the 1-2 weeks it took for similarly-situated Caucasian employees.  Adams alleges she was never offered a stock option cash-out because she was never added to the system as an eligible person, even though a Caucasian reporter with comparable experience and tenure received it.

Additionally, defendant Delucia required monthly meetings, three in total, with Adams to review her work.  Adams alleges that in these meetings, Delucia berated, criticized, and threatened her.  No other similarly-situated Reporter I was required to meet with Delucia.  Adams further alleges that she was denied an essential training tool.  She was not paired with a seasoned employee, as were similarly-situated Caucasian employees, to help her develop her skills and which employee would act as a mentor during her initial period at the newspaper.  Adams alleges that she was also excluded from other training experiences that were afforded to similarly-situated Caucasian employees.  On one occasion,

she was excluded by DeLucia from a workshop for reporters with less than five years experience held at the Manchester bureau.

In April 2000, following her breaking story that Hartford had the lowest response rate in the country to the 2000 census, Adams was invited to appear on "CT 2000" with Al Terzi, one of Connecticut's leading TV news anchors. Adams alleges that she was told by Sleight she should not appear on the show because it would require too much research. Adams further alleges that she was denied by O'Brien the opportunity to write a story about high school students who work more than 15 hours per week. In July 2001, Adams was not given the breaking story assignment about an explosion in a chemical plant in Manchester. Instead, four Caucasian reporters and a Caucasian intern were given the story.

Adams also alleges that she was excluded from recognition when she received awards. On one particular occasion, when she received a Columbia University fellowship, it took several weeks, instead of the typical two days when Caucasian staff members are involved. On one occasion, two Caucasian reporters were added to the byline of a national story Adams had broken, although one of the employees had done very little work on the story.

With respect to employee evaluations, Adams alleges that similarly-situated Caucasian employees were given the opportunity to prepare a self-evaluation before their supervisor crafted one. Adams was not given the same opportunity for any of the four

separate evaluations given during her employment. Adams alleges that she was also required to work at a faster rate, with tighter deadlines, than similarly-situated Caucasian reporters.

In the spring of 2001, at Tarr's suggestion, Adams was required to sit with Tarr while Tarr edited her stories. No other similarly-situated employee was subjected to this process. This became a requirement for Adams after national publication of a story called "Losing Ground", in which Adams was quoted, describing the lack of diversity in the news and reporting profession. Following publication, Adams was subject to even greater harassment and disparate treatment by her supervisors and editors. On May 31, 2001 Adams alleges that she was told her job was threatened if she continued to make such comments.

In May 2001, Adams formally complained to The Hartford Courant about alleged racial hostility directed towards her. After she complained, Adams alleges that she remained subject to discriminatory treatment. In December 2001, Adams was passed over for a position at the city desk in favor of a Caucasian employee. Adams applied for the position left by the employee filling the city desk position, but was passed over for that position in favor of a Caucasian employee who had been employed by The Hartford Courant and Tribune Company only since July 2001. Additionally, Adams alleges that, after complaining about discriminatory practices, she was harassed with unreasonable amounts of

email from the editors and that her interactions with others were tracked.

Adams filed a complaint with the Equal Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO") in May 2002. Adams was terminated on June 3, 2002 by The Hartford Courant and Tribune Company. On January 23, 2003, Adams received a Right to Sue Letter from the EEOC. Adams alleges that, in retaliation for her complaints, the defendants caused to be printed and published, on February 28, 2003, a demeaning and fallacious news story about her in three sections of The Hartford Courant. Adams alleges that the article falsely accused her of misrepresenting herself as the President of the Connecticut Association of Black Communicators. Adams alleges this information is false and, having no opportunity before publication to clarify matters, she has been forced to defend her integrity.

Adams filed this lawsuit on March 18, 2003, and filed a substituted complaint on August 15, 2003.

II.     DISCUSSION

    A.     Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Reed v. Town of Branford, 949 F. Supp. 87, 89 (D. Conn. 1996). In considering such a

motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). "In considering a motion to dismiss . . .a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . .[and review all allegations] in the light most favorable to the non-moving party." Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**B.   Intentional Infliction of Emotional Distress Claim**

The employee defendants and The Hartford Courant and Tribune Company seek dismissal of Adams' claims of intentional infliction of emotional distress. The defendants

argue that Adams has not stated, on the face of the complaint, allegations which meet the pleading requirement for this claim.

The elements of intentional infliction of emotional distress are well-established. "It must be shown: 1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct, 2) that the conduct was extreme and outrageous, 3) that the defendant's conduct was the cause of the plaintiff's distress, and 4) that the emotional distress sustained by the plaintiff was severe." Murray v. Bridgeport Hosp., 40 Conn. Supp. 56, 62 (1984)(citations omitted); see also Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 194 (D. Conn. 2000); Carrol v. Allstate Ins. Co., 262 Conn. 433, 442 (2003); Appleton v. Bd. of Edu. of the Town of Stonington, 254 Conn. 205, 210 (2000); Petyan v. Ellis, 200 Conn. 243, 253 (1986). It is initially a question for the court to determine whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous. Appleton, 254 Conn. at 210 (quoting Bell v. Bd. of Edu., 55 Conn. App. 400, 410 (1999)). It is only where reasonable minds disagree that it becomes an issue for the jury to decide. Id; see also Whitaker v. Haynes Const. Co., Inc., 167 F. Supp. 2d 251, 254 (D. Conn. 2001).

In order to be held liable for intentional infliction of emotional distress, the conduct must reach the level of "extreme and outrageous," which is defined as that which "goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a

civilized society, and is of a nature that it is especially calculated to cause, and does cause, mental distress of a very serious kind." Miner, 126 F. Supp. 2d at 194; Petyan, 200 Conn. 243, 254, n.5 (1986)(quoting W. Prosser & W. Keeton, Torts (5th ed. 1984) § 12, p. 60); see also Copeland v. Home and Cmty. Health Servs., Inc., 285 F. Supp. 2d 144, 149 (D. Conn. 2003); Mercer v. Brunt, 272 F. Supp. 2d 181, 188 (D. Conn. 2002)(quoting Russo v. City of Hartford, 158 F. Supp. 2d 214, 226 (D. Conn. 2001)).

This court has held that routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior. Javier v. Engelhard Corp., No. 3:00CV2301 (JCH), 2001 U.S. Dist. Lexis 17341 at *14 (D. Conn. Oct. 1, 2001); see also Parsons v. United Techs. Corp., 243 Conn. 66, 88 (1997). Additionally, Connecticut courts have held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress." Miner, 126 F. Supp. 2d at 195 (citations omitted); see also Perodeau v. City of Hartford, 259 Conn. 729, 757 (D. Conn. 2002)(stating that individuals in the workplace should expect to be subject to workplace gossip, rivalry, personality conflicts and the like). Further, individuals in the workplace should expect to experience some level of emotional distress. Id. The Perodeau Court emphasized that, "There are few things more central to a person's life than a job, and the mere fact of being demoted or denied advancement may be extremely distressing." Id.

However, the Perodeau Court would not allow persons in the workplace to be subject to conduct that "transgresses the bounds of socially tolerable behavior," 243 Conn. at 89 (internal quotations omitted), or that would involve "an unreasonable risk of causing emotional distress . . . that . . . if it were caused, might result in bodily harm." Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978).

Adams' claims against the employee defendants and The Hartford Courant and Tribune Company are that she was not provided a desk or a pager and it took considerably more time to receive business cards; she was denied essential training tools; she was required to attend meetings where her work was discussed and edited; she was given delayed recognition for achievements; she was never offered a stock option cash-out because she was never added in the system as an eligible personnel; and that she was not advanced or given preferred assignments, was eventually terminated, and was generally subject to insults. Adams' allegations against the employee defendants and The Hartford Courant and Tribune Company for intentional infliction of emotional distress do not constitute, as a matter of law, extreme and outrageous behavior, even if they may have been unlawfully motivated or offensive. Such conduct is not "beyond all bounds of decency." 126 F. Supp. 2d at 194. Because Adams has not stated a claim for intentional infliction for emotional distress, the court grants the defendants' motion as to that claim as to all named defendants.

### C. Negligent Infliction of Emotional Distress Claim

The employee defendants, The Hartford Courant and Tribune Company seek dismissal of Adams' claims of negligent infliction of emotional distress. The defendants argue that Adams has not stated, on the face of the complaint, allegations which meet the pleading requirements for this claim.

The elements of negligent infliction of emotional distress are: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress. Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003); see also Buckman v. People Express, Inc., 205 Conn. 166, 173 (1987) (the plaintiff must establish that the defendant "knew or should have known that its conduct involved an unreasonable risk of causing emotional distress, and that the distress, if it were caused, might result in illness or bodily harm [emphasis and internal quotation marks omitted]"). The Connecticut Supreme Court has recognized a cause of action for negligent infliction of emotional distress where no physical injury ensues to the victim. Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978).

In dictum, the Connecticut Appellate Court has stated that, "The elements of negligent and intentional infliction of emotional distress differs as to the state of mind of the

actor and not to the conduct claimed to be extreme and outrageous." Muniz v. Kravis, 59 Conn. App. 704, 709 (App. Ct. 2000). However, as this court pointed out in Copeland, the Muniz court was only presented on appeal with the question of whether the trial court had properly dismissed an intentional infliction claim for failure to allege that the defendant's conduct was extreme and outrageous; no issue concerning negligent infliction was before the court. Copeland, 285 F. Supp. 2d at 150. More importantly, in his concurring opinion in Carrol, Justice Borden states:

> [I]t seems apparent to me that, with respect to proof of the defendant's tortious conduct, the plaintiff has a more difficult burden when the defendant's state of mind is intentional, rather than negligent. Put another way, where the defendant's state of mind is purposefully to inflict emotional distress on the plaintiff, the plaintiff may not recover unless the defendant's conduct in pursuance of that intent is also extreme and outrageous; but where the defendant did not have such a malevolent state of mind, but merely was negligent, the plaintiff may recover without having to prove that the conduct engaged in by the defendant was extreme and outrageous.

262 Conn. at 451-52; see also Copeland, 285 F. Supp. 2d at 150. This court in Copeland, taking into account the legal backdrop in Connecticut regarding negligent infliction of emotional distress claims, concluded that "plaintiffs need not have alleged extreme and outrageous conduct to state a claim for negligent infliction of emotional distress under Connecticut state law." 285 F. Supp. 2d at 148. As the court concluded there, both before and after Muniz, the Connecticut Supreme Court has not required extreme and outrageous

behavior for negligent infliction.[1]  See id. at 151.

However, in order to sustain a claim of negligent infliction of emotional distress in the employment context, the alleged conduct must arise in the termination process.  See Perodeau, 259 Conn. at 749 (holding that municipal employees may not be found liable for negligent infliction of emotional distress arising out of actions or omissions occurring in the context of termination of employment); see also Parsons, 243 Conn. at 88 (quoting Morris v. Hartford Courant Co., 200 Conn. 676, 682, 513 A.2d 66, 69 (Conn. 1986)); Hanna v. Infotech Contract Servs., Inc., No. 3:01cv680 (SRU), 2003 U.S. Dist. LEXIS 7056 (D. Conn. April 21, 2003), aff'd. 2004 U.S. App. LEXIS 4692.  Second, the unreasonable conduct in the termination process must be "done in an inconsiderate, humiliating or embarrassing manner."  Schug v. The Pyne-Davidson Co., No. 3:99CV1493(CFD), 2001 U.S. Dist. Lexis 21246, at *24-25 (D.Conn., Dec. 10,2001).  A plaintiff cannot base a negligent infliction of emotional distress claim on the fact of termination alone, even if that termination is wrongful.  Copeland, 285 F. Supp. 2d at 152 (quoting Parsons, supra, 88-

---

[1]  See, e.g.: DeCorso v. Watchtower Bible & Tract Soc'y of N.Y., Inc., 78 Conn. App. 865, 874-880 (2003)(first approving the dismissal of intentional infliction claim for failure to show outrageous and extreme conduct and later upholding dismissal of negligent infliction claim on entirely different grounds); Edwards v. Community Enterprises, Inc., No. 3:00cv1518 (SRU), 2003 U.S. Dist. LEXIS 4052, *42 (D. Conn . March 17, 2003)(granting motion to dismiss intentional infliction claim for failure to show outrageous and extreme conduct but refusing to dismiss negligent infliction claim); Armstead v. Stop & Shop Cos., No. 3:01cv1489 (JBA), 2003 U.S. Dist. LEXIS 4107, *17-19 (D. Conn. March 17, 2003)(discussing distinct conduct requirements for intentional and negligent infliction claims).

89).

In order for a negligent infliction of emotional distress claim to survive a 12(b)(6) motion to dismiss, the following questions must be answered affirmatively: has the plaintiff has presented evidence 1) that his employer engaged in unreasonable conduct, that is, conduct that was "inconsiderate" or intended to humiliate or embarrass the employee; and, 2) that the conduct was engaged in during the course of the employment termination process.  Id. at 152-153 (quoting Schug, 2001 U.S. Dist. LEXIS 21246, at *24-25 (internal citations omitted).

Adams' original complaint (hereinafter "Complaint")[Dkt. No. 1] does not describe the manner in which the actual discharge took place.  Paragraph 42 of the Complaint states that Adams was terminated in June of 2002, and paragraph 52 states that Adams was terminated while awaiting approval for medical leave.  Complaint at ¶¶ 42 and 52.  Adams' substituted complaint (hereinafter "Substituted Complaint")[Dkt. No. 16] likewise does not describe the manner in which the actual discharge took place.  Paragraph 74 of the Substituted Complaint states that "the corporate defendants did not possess a legitimate reason for termination of the plaintiff's employment."  Substituted Complaint at ¶ 74.  The only other statement regarding termination is in paragraph 563 of Adams' Substituted Complaint.  It states, "while the plaintiff awaited approval for medical leave, the defendants terminated her employment."  Substituted Complaint at ¶ 56.

There are no alleged facts within the Substituted Complaint that even suggest that there was any unreasonable conduct during the actual discharge or that the discharge was done in an inconsiderate, humiliating or embarrassing manner.  The fact that the termination may have been for illegitimate reasons is not by itself sufficient to sustain a claim for negligent infliction of emotional distress.  See Schug, 2001 U.S. Dist. LEXIS 21246 at *25 (holding that termination of employment, even if based on age discrimination, is not sufficient by itself to sustain a claim of negligent infliction of emotional distress); see also Giordano v. Gerber Scientific Prods., Inc., No. 3:99cv00712 (EBB), 1999 WL 1067820, at *2 (D. Conn. Nov. 5, 1999), aff'd. 2001 WL 1586451 (2d Cir. Dec. 10, 2001).  Because Adams has not stated a claim for negligent infliction for emotional distress occurring during the termination process, the court grants the defendants' motion, as to all named defendants.

However, Paragraph 69 of the Substituted Complaint alleges that in retaliation for her complaints to the EEOC and the CCHRO, The Hartford Courant and Tribune Company caused to be printed and published a demeaning and fallacious news story with about Adams in three sections of their newspaper.  This action occurred after Adams was terminated.  The principles discussed above, at pages 11 to 13, apply to a plaintiff's claims for negligent infliction of emotional distress outside the employment context.  175 Conn. at 345; see also Brockman v. Windsor Bd. of Educ., 3:99cv1220 (JBA), 2001 U.S. Dist. Lexis

23939 at *46 (July 23, 2001) (citing Montinieri v. S. New England Tel. Co., 175 Conn. 337 (2001) as the case where Connecticut first recognized a cause of action for negligent infliction of emotional distress, although not in an employment context); Clarke v. Bridgeport Hospital, 2001 Conn. Super. Lexis 1689 at *31 (June 14, 2001) (holding that the same principles apply to a plaintiff's claims for negligent infliction of emotional distress). A claim for negligent infliction for emotional distress can survive a Rule 12(b)(6) motion to dismiss if there are alleged facts that support the claim. Adams alleges no facts within the Substituted Complaint that any of the individually named defendants were involved in the publication, nor does Adams disclose the individual author of the story. Any claim of negligent infliction of emotional distress is therefore dismissed as to defendants Delucia, Sleight, O'Brien, Tarr, Chow, Teutsch, and Dennis. However, dismissal of Adams' claim of negligent infliction of emotional distress for the alleged publication of a demeaning story as to defendants The Hartford Courant and Tribune Company is denied. Further, plaintiff is given leave to file an Amended Complaint within 21 days if she has a legal and factual basis to assert this claim against any individual defendant.

### C. Title 42 U.S.C. § 1981 Claims

Despite a long tradition in the Second Circuit to require heightened pleadings in employment discrimination cases[2], a recent United States Supreme Court decision has made it clear that the heightened pleading standard imposed by the Court of Appeals in the Second Circuit in employment discrimination cases conflicts with the Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

However, Adams has not provided a "short and plain statement" that would give defendants Chow, Dennis, and Teutsch "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Indeed, Adams has not provided a single allegation against any of these defendants.[3] The Defendants' Motion to Dismiss § 1981 claims against defendants Chow, Dennis, and Teutsch is

---

[2] Prior to the Swierkiewicz decision, in order to survive a motion to dismiss on a § 1981 claim, a plaintiff was required to allege with specificity facts sufficient to show or raise plausible inference that defendants purposefully discriminated against the plaintiff on the basis of plaintiff's race. See e.g. Garg v. Albany Indus. Dev. Agency, 899 F. Supp. 961 (N.D.N.Y. 1995), aff'd., 104 F.3d 351 (2d Cir. 1996).

[3] There is some general language within the Substituted Complaint that refers generally to supervisors, which could indicate Dennis, for example. Paragraph 41 alleges that similarly-situated Caucasian employees were given the opportunity to prepare a self-evaluation before their supervisor's crafted one. However, it is unclear whether Dennis is the supervisor to whom Adams refers.

therefore granted. If plaintiff has a legal and factual basis to do so, she may file an Amended Complaint within 21 days setting forth such a claim.

## III. CONCLUSION

The court grants Defendants' Motion to Dismiss Adams' claims of intentional infliction of emotional distress as to all named defendants. The court grants Defendants' Motion to Dismiss Adams' claims of negligent infliction of emotional distress occurring during the employment context. The court grants Defendants' Motion to Dismiss Adams' claims of negligent infliction of emotional distress occurring outside of the employment context as to defendants Delucia, Sleight, O'Brien, Tarr, Chow, Teutsch, and Dennis, with leave to file an Amended Complaint within 21 days if there is a legal and factual basis to allege such a claim against any of these defendants. However, dismissal of Adams' claim of negligent infliction of emotional distress for the alleged publication of a demeaning story as to defendants The Hartford Courant and Tribune Company is denied. The court grants defendants' Motion to Dismiss Adams' claims of unlawful discrimination under 42 U.S.C. § 1981 as to defendants Chow, Dennis, and Teutsch, with leave to file an amended complaint within 21 days, if there is a legal and factual basis to do so.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 14th day of May, 2004.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge