**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANN MARIE ADAMS, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:03CV0477 (JCH) |
| | : | |
| VS. | : | |
| | : | |
| THE HARTFORD COURANT, TRIBUNE COMPANY, | : | |
| LYNNE DELUCIA, PETER SLEIGHT, JOE OBRIEN, | : | |
| JAN TARR, | : | |
| Defendants. | : | JUNE 17, 2004 |

**THIRD SUBSTITUTED COMPLAINT**

**I.      PRELIMINARY STATEMENT**

1.   This action is brought against the defendant, The Hartford Courant, and the

defendant, Tribune Company, pursuant to Title VII of the Civil Rights Act of 1964,

as amended, in which the plaintiff seeks declaratory, injunctive and equitable relief,

compensatory and punitive damages, and costs and attorney fees for the race

discrimination suffered by the plaintiff when the defendant, Hartford Courant, and

the defendant, Tribune Company, discriminated against the plaintiff in the terms and

conditions of her employment climaxing in the termination of the plaintiff's

employment on account of the plaintiff's race and color.

2.   In addition, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, this action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorney fees against the defendant, The Hartford Courant, and the defendant, Tribune Company, for the unlawful employment practices the defendant, The Hartford Courant, and the defendant, Tribune Company, inflicted on the plaintiff when the defendant, The Hartford Courant and the defendant, Tribune Company, retaliated against the plaintiff for having previously opposed the race and color discrimination directed at the plaintiff by the defendant, The Hartford Courant, and the defendant, Tribune Company, and for  having participated in activity protected by the provisions of Title VII of the Civil Rights Act of 1964.

3.   Moreover, this action is brought against the defendants, The Hartford Courant, Tribune Company, Lynne DeLucia, Peter Sleight, Joe O'Brien, and Jan Tarr, pursuant to the Civil Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, to redress the deprivation by the defendants of rights secured to the plaintiff by the laws of the United States.  The defendants discriminated against the plaintiff in her employment on the grounds of her race.

4. Additionally, this action is brought against the defendant, Hartford Courant, and the defendant, Tribune Company, pursuant to the Connecticut Fair Employment Practices Act, Section 46a-51, et seq., in which the plaintiff seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorney fees for the race discrimination suffered by the plaintiff when the defendant, The Hartford Courant, and the defendant, Tribune Company, discriminated against the plaintiff in the terms and conditions of her employment climaxing in the termination of the plaintiff's employment on account of the plaintiff's race and color.

5. Also, this action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorney fees against the defendant, The Hartford Courant, and the defendant, Tribune Company, for the unlawful employment practices inflicted on the plaintiff when the defendant, The Hartford Courant and the defendant, Tribune Company, in violation of the provisions of the Connecticut Fair Employment Practices Act, retaliated against the plaintiff for the plaintiff's previous opposition to the acts of race and color discrimination directed against her by the defendant, The Hartford Courant, and the defendant, Tribune Company, and for her participation in activity protected by the provisions of the Connecticut Fair Employment Practices Act, Section 46a-51 et seq.

6.  This action seeks monetary damages, pursuant to the common law of the state of Connecticut, against the defendants, The Hartford Courant, Tribune Company, Lynne DeLucia, Peter Sleight, Joe O'Brien, Jan Tarr, for their negligent infliction of emotional distress on the plaintiff.

## II.     JURISDICTION

7.  This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

8.  This action also arises under the provisions of Title 42 U.S.C. §1981.

9.  Jurisdiction is invoked pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1343(a)(3), Title 28 U.S.C. § 1343(a)(4), Title 28 U.S.C. § 1367, Title 28 U.S.C. § 2201(a), Title 42 U.S.C. § 1981, and Title 42 U.S.C. §2000e-5(f).

10. This Court's jurisdiction is further conferred over the plaintiff's state law claims pursuant to the Court's supplemental jurisdiction.

11. All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), have occurred or have been complied with in the following manner:

   a.  A charge of employment discrimination on the basis of race and color was filed on or about May 17, 2002, with both the State of Connecticut Commission on

Human Rights and Opportunities and with the United States Equal Employment Opportunity Commission, which filing was within 180 days of the commission of the unlawful employment practices alleged therein;

b.  A second complaint charging the defendant, Hartford Courant, and the defendant, Tribune Company, with terminating the plaintiff's employment on account of her race and on account of her opposition to the unlawful discriminatory actions directed at her by the defendant, Hartford Courant, and the defendant, Tribune Company, and her participation in protected civil rights activities was filed on or about October 15, 2002, with both the State of Connecticut Commission on Human Rights and Opportunities and with the United States Equal Employment Opportunity Commission, which filing was within 180 days of the commission of the unlawful employment practices alleged therein;

c.  By letter dated January 23, 2003, the plaintiff was issued a "notice of right to sue" by the United States Equal Employment Opportunity Commission (a copy of which is attached and labeled Exhibit A).

d.  On July 7, 2003, the State of Connecticut Commission on Human Rights and Opportunities issued a "Release of Jurisdiction" over the plaintiff's Connecticut Fair Employment Practices Act complaints.

12. Declaratory, injunctive, compensatory and equitable relief is sought pursuant to Title 28 U.S.C. §2201, §2202 and Title 42 U.S.C. §2000e-5(g). Compensatory and punitive damages are sought pursuant to Title 42 U.S.C. §1981 and Title 42 U.S.C. §1981a.

13. The court possesses supplemental jurisdiction over the plaintiff's claims brought under the provisions of the Connecticut Fair Employment Practices Act.

14. Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k), and Title 42 U.S.C. §1988.

**III.    VENUE**

15. This action properly lies in the District of Connecticut pursuant to Title 29 U.S.C. §1391(b) because the claim arose in this judicial district, and pursuant to Title 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practices of which the plaintiff complains were committed in this judicial district.

**IV.    PARTIES**

16. During all times mentioned in this action, the plaintiff was, and still is, an adult citizen of the United States residing in the State of Connecticut. She is an African-American whose color is black.

17. During all times mentioned in this action, the defendant, The Hartford Courant, was and is a corporation doing business in the state of Connecticut. It is and, at all relevant times, was an employer within the meaning of the aforesaid statutes and, at all relevant times, engaged in an industry affecting commerce and employed more than fifteen individuals. This defendant will be referred to as the corporate defendant.

18. During all times mentioned in this action, the defendant, Tribune Company, was and is a corporation doing business in the state of Connecticut. It is and, at all relevant times, was an employer within the meaning of the aforesaid statutes and, at all relevant times, engaged in an industry affecting commerce and employed more than fifteen individuals. This defendant will be referred to as the corporate defendant.

19. The defendant, The Hartford Courant, is a person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

20. The defendant, Tribune Company, is a person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

21. The defendant, The Hartford Courant, is an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(b).

22. The defendant, Tribune Company, is an employer within the meaning of Section

701(b) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(b).

23. The defendant, The Hartford Courant, is an employer and a person as those two terms are defined by the Connecticut Fair Employment Practices Act.

24. The defendant, Tribune Company, is an employer and a person as those two terms are defined by the Connecticut Fair Employment Practices Act.

25. During all times relevant to this Complaint, the defendant, LYNNE DELUCIA, was the state editor for the corporate defendants. This defendant is sued in her individual capacity.

26. During all times relevant to this Complaint, the defendant, PETER SLEIGHT, was a bureau chief for the corporate defendants. This defendant is sued in his individual capacity.

27. During all times relevant to this Complaint, the defendant, JOE O'BRIEN, was an assistant bureau chief and day editor for the corporate defendants. This defendant is sued in his individual capacity.

28. During all times relevant to this Complaint, the defendant, JAN TARR, was the editor of the Manchester Extra for the corporate defendants. This defendant is sued in her individual capacity.

29. During all times relevant to this Complaint, the defendant, Vivian Dennis, was one of

the plaintiff's supervisors at the Manchester Bureau of The Hartford Courant.

30. During all times relevant to this Complaint, the defendant, Vivian Chow, was the human resources manager for the defendant, The Hartford Courant.

31. During all times relevant to this Complaint, the defendant, Cliff Teutsch, was the managing editor of The Hartford Courant.

## V.   STATEMENT OF FACTS

32. The plaintiff commenced employment with the corporate defendants in January of 2000 in the position of Reporter I.

33. Prior to her employment with the corporate defendants, the plaintiff had considerable, and successful, experience in the field of journalism, including employment as a reporter for the Norwich (Connecticut) Bulletin for whom she covered local government in five towns and the police beat, as well as writing enterprise stories, spot news stories.

34. Upon being hired, the plaintiff's dual responsibilities were to write stories for a publication entitled the Manchester Extra and to occasionally write stories for a publication entitled The Courant.

35. Soon after the start of her employment with the corporate defendants, the plaintiff

was treated differently by the corporate defendants with regard to the terms and conditions of the plaintiff's employment as compared to similarly situated Caucasian employees.

36. At the time of the plaintiff's employment, the corporate defendants did not provide the plaintiff with the essential job tools of a Reporter I, including a desk, pager and business cards, as other similarly situated Caucasian reporters were routinely provided.

37. The plaintiff was made to wait three (3) months for business cards. Similarly situated Caucasian employees were provided with business cards within a week to two weeks after their arrival

38. Defendant Delucia who rarely worked with Reporter I's, requested monthly meetings with the plaintiff to scrutinize her work. She met with the plaintiff three (3) times. She used the time to shout at the plaintiff. She berated, criticized and threatened the plaintiff. No other similarly situated Reporter I was subjected to such a demeaning process.

39. Although the corporate defendants, as an essential training tool, paired Caucasian employees, similarly situated to the plaintiff, with seasoned employees who helped to develop new employees' skills, the plaintiff was not paired with a seasoned reporter

who would act as a mentor during her initial period at the newspaper.

40. Caucasian employees, similarly situated to the plaintiff, were often given an opportunity to prepare a self-evaluation before their supervisor's crafted one. The plaintiff was not given the same opportunity for the four (4) evaluations performed of her while employed by the corporate defendants. In fact, the responses the plaintiff wrote after her evaluations were not included in her personnel file.

41. The plaintiff was excluded from training experiences that similarly situated Caucasian employees were regularly afforded.

42. On one occasion, two Caucasian reporters were added to the byline of a national story the plaintiff had broken although one of the employees had done very little work on the story.

43. When the plaintiff received various awards, she was not recognized as other similarly situated Caucasian reporters were.

44. The plaintiff was not offered stock option cash out as other similarly situated Caucasian employees were.

45. The plaintiff was required to perform at a faster rate with tighter deadlines than similarly situated Caucasian reporters.

46. In the spring of 2001, defendant Tarr suggested that the plaintiff be subject to a

special process, which required the plaintiff to sit with the defendant Tarr while Tarr edited the plaintiff's stories. This suggestion came after the national magazine printed a major story called "Losing Ground" in which the plaintiff was quoted with regard to the lack of diversity in the news reporting profession. No other similarly situated employee was subject to such a process.

47. The plaintiff also overheard defendant Tarr responding to a question from a third party as to why the plaintiff was still employed at the end of the probation period. Tarr responded, "she wasn't supposed to last that long."

48. When an East Indian reporter was hired for the Manchester bureau, Deb Smith, a Caucasian reporter, was heard to say "We got our next victim"; the East Indian reporter was ultimately transferred to a less desirable bureau.

49. Without notice, the plaintiff was required to report to The Hartford Courant's Hartford office for a one-week rotation. Although the plaintiff successfully completed all assignments and informed the defendant, Sleight, that she enjoyed the experience, she was never again sent to the Hartford office on rotation. By stark contrast, Carrie Budoff, a Caucasian reporter with less experience and comparable tenure to that of the plaintiff, was rotated to the Hartford office on a regular basis and was ultimately transferred to the Hartford office.

50. Following her breaking the story that Hartford had the lowest response rate in the country to the 2000 census in April 2000, the plaintiff was invited to appear on "CT 2000" with Al Terzi, one of Connecticut's leading news anchors. Defendant Sleight, told her that she should not appear because she would have to do "tons and tons" of research.

51. Following publication in American Journal Review in its May 29, 2001 issue and by the National Association of Black Journalists of the plaintiff's experiences in the news reporting profession with regard to the lack of diversity in the news room, the plaintiff became subjected to even greater harassment and disparate treatment by her supervisors and editors.

52. Caucasian State Editor Lynne DeLucia excluded the plaintiff from a workshop for reporters with less than five years experience, notwithstanding the fact that the workshop was held in the Manchester bureau where the plaintiff worked.

53. The names of two Caucasian reporters, Janice Darcy and Bill Leukardkt, were added to the plaintiff's byline on a national story on immigration broken by the plaintiff, although one had performed no significant work on the story. Knowing that she had done very little work on the story, Janice Darcy apologized to the plaintiff for the actions of the plaintiff's supervisors.

54. In November 2001, Paul Stern, a downtown editor asked defendant O'Brien, to assign the plaintiff to work on a larger report about high school students who work in excess of 15 hours per week. After not hearing from Mr. O'Brien, the plaintiff asked about the assignment. O'Brien, in front of the plaintiff's colleagues, inquired if the plaintiff was up to it. The plaintiff never received authorization to work on the story.

55. In late July 2001, the plaintiff was ignored for an assignment to a breaking story about an explosion in a chemical plant in Manchester, Connecticut, the town where the plaintiff worked while Caucasian reporters, Dave Owens, Deb Swift, Eric Danton and Christine Dempsey and a Caucasian intern, Lily Raff were assigned to the story.

56. The announcement of the plaintiff's receipt of a Columbia University fellowship came several weeks after that recognition instead of the typical two days when Caucasian staff members were acknowledged.

57. Earlier that year, the plaintiff also learned that Ms. Budoff, a Caucasian reporter with comparable experience and tenure at the Courant to that of the plaintiff, received a stock option cash out, which was never offered to the plaintiff. The plaintiff later discovered that she was never added to the system of eligible personnel and Caucasian Director of Benefits (Employee Relations) Gene Muzar "was unable" to rectify the situation.

58. In May 2001, the plaintiff formally complained about the racial hostility directed towards her.

59. Despite the plaintiff's complaints, the corporate defendants continued to subject her to discriminatory treatment.

60. On or about May31, 2001, the plaintiff was chastised for comments she reported to a national magazine regarding the lack of diversity in the "newsroom". The plaintiff's job was threatened if she continued to make such comments.

61. In December of 2001, despite the plaintiffs overwhelming qualifications, she was passed over for a position at the city desk in favor of a Caucasian employee.

62. At the same time the plaintiff applied for the position left empty by the employee filling the city desk position. The plaintiff was passed over for that position in favor of a Caucasian employee who had only been employed since July 2001.

63. In December of 2001, a fellow co-worker was overheard telling another white female co-worker -"don't worry about homegirl, she's hanging on by a thread".

64. After the plaintiff complained about the discriminatory practices to which she had been subjected, the harassment intensified. The plaintiff's interaction with others was tracked; and she was harassed with unreasonable amounts of e-mails from editors.

65. On June 3, 2002, the corporate defendants terminated the plaintiff's employment.

66. The termination of the plaintiff's employment occurred within one month of the plaintiff having filed charges of discrimination with the United States Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities.

67. The termination of the plaintiff's employment was due in whole or in part to the racial discrimination to which the plaintiff had been subjected on an ongoing basis, without interruption, from the date of her hire to the date of her termination.

68. After the plaintiff filed complaints with the United States Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities, as previously related, the corporate defendants, in retaliation for her complaints, on February 28, 2003, caused to be printed and published a demeaning and fallacious news story with regard to the plaintiff in three sections of their newspaper.

69. The article falsely accused the plaintiff of misrepresenting herself as the President of The Connecticut Association of Black Communicators.  This information is false.

The plaintiff was not contacted prior to the publication of the article as is customary when an individual's reputation may be damaged. As a result, the plaintiff has been forced to defend her integrity.

70. At all times mentioned herein, the plaintiff was fully qualified to perform the duties of a Reporter I, the position to which she had been hired by the corporate defendants.

71. At all times mentioned herein, the plaintiff satisfactorily performed the duties of Reporter I, the position to which she had been hired by the corporate defendants.

72. The corporate defendants did not possess a legitimate reason for their discriminatory treatment of the plaintiff.

73. The corporate defendants did not possess a legitimate reason for their termination of the plaintiff's employment.

74. Reporters employed by The Hartford Courant's are predominantly white.

75. African Americans are vastly underrepresented in the reporters employed by the corporate defendants at The Hartford Courant.

76. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged and is now suffering and will continue to suffer irreparable injury from her treatment by the defendant unless the defendant is enjoined by this Court.

77. Despite past and ongoing diligent efforts to secure comparable employment, the

plaintiff had been unable to find such suitable employment.

**VI.    FIRST CAUSE OF ACTION (Unlawful Discrimination In Violation Of Title VII Of The Civil Rights Act Of 1964, As Amended, As To The Corporate Defendants, The Hartford Courant And The Tribune Company)**

79-156.  The plaintiff incorporates as if re-alleged paragraphs 1 through 78.

157. Because the plaintiff's race and color were motivating factors and made a difference in the decision by the corporate defendants to treat the plaintiff differently in the terms and conditions of her employment, and in terminating her employment, the defendant has violated the provisions of Title VII of the Civil Rights Act of 1964, as amended.

158. The corporate defendants intentionally engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

**VII.    SECOND CAUSE OF ACTION (Unlawful Discrimination In Violation of Title 42 U.S.C. § 1981 As To All Defendants)**

159-236. The plaintiff incorporates as if re-alleged paragraphs 1 through 78.

237. The defendant, Teutsch, treated the plaintiff less favorably than another white employee of The Hartford Courant, Carmiel Oshrat, who was similarly situated to the plaintiff with

regard to the terms, conditions, and duties of their employment.

238. The Courant hired Oshrat on July 5, 2001, some seventeen months after The Hartford Courant hired the plaintiff; yet Teutsch authorized Oshrat's promotion despite her problems with meeting deadlines and her extraordinary amount of errors. On the other hand, the plaintiff, who was more deserving of a promotion, was never considered for a promotion.

239. Teutsch failed to act appropriately on the complaints the plaintiff made about discrimination, retaliation and biased evaluations. In a meeting in January of 2002, Teutsch sided with the defendant, DeLucia and the defendant, Sleight against the plainiff despite noting how trivial their complaints were of the plaintiff. Sleight had said: "She just comes in and does her work. She rarely talks to anybody. And when she does, she responds with monosyllabic words." Teutsch had replied: "What's wrong with that. We have guys down here doing that everyday?"

240. Teutsch authorized the termination of the plaintiff's employment for "insubordination" although no one else, including Rinker Buck, a white reporter of The Hartford Courant, and well known for his temper tantrums against editors and colleagues, had been fired for insubordination. With regard termination of employees, Teutsch treated white reporters more favorably than he treated the plaintiff.

241. The defendant, Vivian Dennis, managed white reporters much differently than she did the plaintiff.

242. The defendant, Dennis, had a timid approach to white reporters, yet consistently used vicious tones and shouted at the plaintiff.

243. In the very first week of the plaintiff's employment with the defendant, Dennis shouted at the plaintiff and said she wasn't ready for the job. Dennis, however, did not shout at Carrie Budoff and Bryan O'Rourke when she said that these two white reporters weren't ready for their jobs when they had trouble writing town budget stories. Instead, she gave them a tip sheet on how to write a budget story.

244. Knowing that I was a West Indian, Dennis stated she didn't like West Indians.

245. Dennis once placed trashcans and garbage bags on and around the plaintiff's desk as another example of the deplorable manner in which she treated the plaintiff.

246. When the plaintiff was sick and asked to leave after working close to twelve hours, Dennis refused the plaintiff's request. It was customary for reporters to file their stories and place their pagers and home number at the top of their stories. Dennis allowed white reporters to go home and then called them if she had questions. Dennis required the plaintiff to stay late at night until she got to the plaintiff's story.

247. The defendant, Vivian Chow, failed to address several complaints the plaintiff made about discrimination and retaliation to which the plaintiff had been subjected while the plaintiff was in the Manchester bureau.

248. Dennis, instead of adequately addressing the plaintiff's complaints, offered the plaintiff a separation package and asked her to voluntarily leave her employment with The Hartford Courant, refusing, at the same time, the plaintiff's request to transfer to another bureau.

249. Because the plaintiff's race and color were motivating factors and made a difference in the decision by the defendants to treat the plaintiff differently in the terms and conditions of her employment, and in terminating her employment, the defendants have violated the provisions of Title 42 U.S.C. § 1981.

250. The defendants intentionally engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title 42 U.S.C. § 1981.


**VIII.   THIRD CAUSE OF ACTION (Unlawful Retaliation As To The Corporate Defendants, The Hartford Courant And The Tribune Company)**

251-328. The plaintiff incorporates as if re-alleged paragraphs 1 through 78.

329. The corporate defendants violated the provisions of Title VII of the Civil Rights Act of 1964, as amended when it retaliated against the plaintiff for filing charges of discrimination against the defendant with the Connecticut Commission on Human Rights

and Opportunities and the United States Equal Employment Opportunity Commission.

330. The corporate defendants violated the provisions of Title VII of the Civil Rights Act of 1964, as amended when it retaliated against the plaintiff after she complained to the corporate defendant, The Hartford Courant, that she was being treated unfairly by The Hartford Courant on the basis of her race and color with regard to the terms and conditions of her employment.

331. But for the plaintiff filing charges of discrimination against the corporate defendants with the Connecticut Commission on Human Rights and Opportunities and the United States Equal Employment Opportunity Commission, the corporate defendants would not have intensified their discriminatory treatment of the plaintiff.

332. But for the plaintiff filing charges of discrimination against the corporate defendants with the Connecticut Commission on Human Rights and Opportunities and the United States Equal Employment Opportunity Commission, the corporate defendants would not have terminated the plaintiff's employment as a Reporter I.

333. But for the plaintiff complaining to the corporate defendant, The Hartford Courant, that she was being treated unfairly by The Hartford Courant on the basis of her race and color with regard to the terms and conditions of her employment, the corporate defendants would not have intensified their discriminatory treatment of the plaintiff.

334. But for the plaintiff complaining to the corporate defendant, The Hartford Courant, that she was being treated unfairly by The Hartford Courant on the basis of her race and color with regard to the terms and conditions of her employment, the corporate defendants would not have terminated the plaintiff's employment.

335. It was only because the plaintiff first complained internally to The Hartford Courant about the race and color discrimination to which she was being subjected to no avail, and then filed charges of discrimination against the corporate defendants with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission that the corporate defendants retaliated against the plaintiff by treating her less favorably than they treated similarly situated Caucasian employees.

336. It was only because the plaintiff first complained internally to The Hartford Courant about the race and color discrimination to which she was being subjected to no avail, and then filed charges of discrimination against the corporate defendants with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission that the corporate defendants retaliated against the plaintiff by terminating her employment.

**IX.    FOURTH CAUSE OF ACTION (Violation of the Connecticut Fair Employment Practices Act as to the corporate defendants, The Hartford Courant and the Tribune Company)**

337-414. The plaintiff incorporates as if re-alleged paragraphs 1 through 78.

415. The actions of the defendant constitute violations of the Connecticut Fair Employment Practices Act, Connecticut General Statutes §§ 46a-60(a) (1) and 46a-60 (a) (4).


**X.    FIFTH CAUSE OF ACTION (Negligent Infliction Of Emotional Distress, As To The Corporate Defendants)**

468-542. The plaintiff incorporates as if re-alleged paragraphs 1 through 78.

543. The corporate defendants knew, or in the exercise of reasonable care should have known, that their conduct was likely to cause the plaintiff to suffer emotional distress so severe that it could result in physical illness. In fact, the plaintiff's suffered such severe stress that it caused her internal bleeding. The plaintiff was scheduled for surgery and was out sick for five days. While the plaintiff awaited approval for medical leave, the defendants terminated her employment.

544. Severe emotional distress is the probable and reasonably foreseeable consequence of the conduct engaged in by the corporate defendants as described above.

**XI.      PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

**A.  First Cause of Action**

a.  Declare the conduct engaged by the defendants to be in violation of the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended;

b.  Enjoin the defendants from engaging in such conduct;

c.  Award plaintiff equitable relief of reinstatement to her employment with back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

d.  Award plaintiff compensatory and punitive damages;

e.  Award plaintiff costs and attorney fees; and

f.  Grant such other and further relief as the Court may deem just and proper.

**B.  Second Cause of Action**

a.  Declare the conduct engaged by the defendants to be in violation of the plaintiff's rights under Title 42 U.S.C. § 1981;

b.  Enjoin the defendants from engaging in such conduct;

c.  Award plaintiff equitable relief of reinstatement to her employment with back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

d.  Award plaintiff compensatory and punitive damages;

e.  Award plaintiff costs and attorney fees; and

f.  Grant such other and further relief as the Court may deem just and proper.

### C. **Third Cause of Action**

a. Declare the conduct engaged by the defendants to be in violation of the plaintiff's rights under the anti-retaliatory provisions of Title VII of the Civil Rights Act of 1964, as amended;

b. Enjoin the defendants from engaging in such conduct;

c. Award plaintiff equitable relief of reinstatement to her employment with back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

d. Award plaintiff compensatory and punitive damages;

e. Award plaintiff costs and attorney fees; and

f. Grant such other and further relief as the Court may deem just and proper.

### D. **Fourth Cause of Action**

a. Declare the conduct engaged by the defendants to be in violation of the plaintiff's rights under the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60(a)(1) and Connecticut General Statutes § 46a-60(a)(4).

b. Enjoin the defendants from engaging in such conduct;

c. Award plaintiff equitable relief of reinstatement to her employment with back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

d. Award plaintiff compensatory and punitive damages;

e. Award plaintiff costs and attorney fees; and

f. Grant such other and further relief as the Court may deem just and proper.

E.  **Fifth Cause of Action**

a.  Award plaintiff compensatory and punitive damages.

b.  Award plaintiff costs and attorney fees; and

c.  Grant such other and further relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A TRIAL BY JURY.**

THE PLAINTIFF – ANN- MARIE ADAMS

BY_____
Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
thomasbucci@earthlink.net
Fed. Bar #ct07805

## CERTIFICATION OF SERVICE

This is to certify that a copy of the within and foregoing *Third Substituted Complaint* was mailed via first-class U.S. mail, postage prepaid, on this 17th day of June, 2004, to:

Sarah Moore Fass, Esquire (ct 18313)
Victoria Woodin Chavey, Esquire (ct 14242)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901-2047
Tel: (203) 977-7300


_____
Thomas W. Bucci